The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. Good morning, everyone. We're proceeding in two sessions today. The first case we're going to take up is Zavala-Molina v. Bondi. I'm going to thank the University of San Diego Law School for its pro bono work on this matter. And counsel, you may proceed. Good morning, Your Honors, and may it please the court. My name is Grace Caponnetto. I'm a certified law student. And I'm here today on behalf of the petitioner, Marta Alicia Zavala-Molina. I'd like to respectfully request three minutes of rebuttal on behalf of my co-counsel, Christina Maraskis. All right. You may proceed. Thank you, Your Honor. Ms. Zavala-Molina was brutally raped and tortured with a knife for three hours on the edge of a cliff and was released on the sole condition that she not report her crime to the police. Ms. Zavala-Molina came to the United States to escape the constant state of fear she was living in. And to flee from her persecutor and his credible death threats. Unfortunately, upon her arrival, she was failed by our immigration justice system when the immigration judge and the BIA made critical legal errors in her case. There are three distinct legal reasons this court should grant Ms. Zavala-Molina's petition for review and remand this case to the BIA with appropriate instructions. First, the BIA erred legally in finding that there was no nexus between the harm Ms. Zavala-Molina suffered and her particular social groups. This court has long held that the nexus inquiry is a holistic one. Even if Ms. Zavala-Molina's first attack was an isolated act of criminal violence, the second attack plainly was not. The second attack resulted directly from Ms. Zavala-Molina's reporting to the police of her rape and her fight for justice in El Salvador. The second time Ms. Zavala-Molina encountered her attacker, he stated to her, quote, did you think that I was going to forget about you? And quote, at last I found you after eight years. Can I ask you a question? You are requesting an exception to Honcharoff based on having incompetent counsel, having the IJ and counsel not adequately develop the record, and to litigate substantially similar claims. And so I'm wondering if there's a tension there between saying counsel was incompetent, could not raise socially recognizable particular social groups, but then saying, but let's litigate the substantially same ones. Isn't that just always going to fail? And isn't there a tension both in the exception you're proposing and in sort of how you've argued this case? Because your opening brief says this was an incompetent lawyer, none of these social groups are recognizable, and then in your reply brief you say, but I'm also raising substantially the same particular social groups. I'm just wondering if all of your criticisms of the previous counsel in your opening brief also apply to your social groups in the reply brief. Yes, Your Honor. They apply equally to both the particular social groups raised before the immigration judge and those raised before the BIA. So both sets of PSGs are defective. That would mean yours are also defective. So then why would you be entitled to any relief? Your Honor, the particular social groups posed before the BIA are substantially similar to those posed below. Ms. Zavala-Molina's counsel was ineffective, we argue, throughout her whole proceeding. However, his ineffectiveness is glaring before the immigration judge specifically. The particular social groups that he posed before the BIA were substantially similar variations of those proposed before the immigration judge, and those groups were the young women who are particular victims of sexual crimes who further report their assailants to the authorities. That group is substantially similar to the three raised before the immigration judge, which were rape victims, Salvadorian women who have been subjected to forceful rape by a gang member and escaped, and individuals who filed a complaint with the authorities. Here, the argument that this court may choose to extend an exception to the Hontra v. Barr case is an argument in the alternative. So if this court were to find that Ms. Zavala-Molina's particular social groups are not substantially similar, then we argue that the court has an opportunity to extend an exception to the Hontra v. Barr case. However, this court does have a long-standing principle of accepting substantially similar particular social groups on appeal. For example, in the Akhlesund v. Barr case, and more recently in an unpublished Ninth Circuit decision, where the court rejected the government's argument that the applicant waived her first particular social group because she presented a new particular social group in her opening statement. I guess I'm still unclear because it seems like you're in a Catch-22, right? If they're not substantially similar, then you haven't exhausted. If they are substantially similar, then they suffer from the same deficiencies of circularity, not socially distinct. So I guess I'm not clear on why you're not in a Catch-22 here and how you overcome that. Yes, Your Honor. So the exhaustion issue is at the forefront of this particular argument as well. However, the BIA did address the merits of the particular social groups posed before it in a footnote, where it stated that each of the particular social groups posed before it were circularly defined. So the fact that the BIA did address the particular social groups posed before it, rather than simply summarily discarding them because they were unexhausted, opens the door here for those claims to have been exhausted. And this court in Soka Gonzalez v. INS found similarly. When the BIA didn't officially address or direct an entire paragraph of its analysis towards a particular social group or an issue, the court still found that issue to have been exhausted because the BIA addressed it. Yes, Counsel. So what is your best iteration of your particular social group, and why is it cognizable? Yes, Your Honor. So the best iteration of the particular social group here is the one posed before the BIA, which is young women who are particular victims of sexual crimes who further report their assailants to the authorities. The cognizability of that social group has yet to be addressed by the BIA, especially in light of this court's recent precedent in the Alamambeyoso v. Bondi case. The court clearly addressed the merits of the particular social groups through a freestanding circularity analysis. However, that analysis is no longer valid before this court, as this court decided in the Alamambeyoso case earlier this year. So the BIA has yet to have an opportunity to consider the merits of these particular social groups in line with current Ninth Circuit precedent. So on that basis, also, we argue that this court ought to remand the case to the BIA. What is the case you're relying on from earlier this year? Alamambeyoso v. Bondi. It was a case submitted in our 28-J letter to the court. The court in that case considered an identical argument here as the BIA and the immigration judge are making, where the BIA and the immigration judge are stating that Ms. Zavala-Molina's particular social groups are impermissibly circular because they're defined by the harm that she experienced. However, the court noted explicitly in that decision that they deemed that analysis the freestanding circularity analysis, and they stated that that analysis has no foundation in BIA or circuit precedent. And they quoted the Diaz-Reynoso v. Bondi, or Barr case, excuse me, where the court noted that simply because a particular social group mentions the harm that an individual suffered, it doesn't make that particular social group impermissibly circular. The immigration judge found your asylum application, your client's asylum application, untimely. So why doesn't that make your client statutorily ineligible for asylum, since you didn't argue changed country conditions or circumstances? The BIA didn't address the timeliness of Ms. Zavala-Molina's I-589 application, and therefore that decision or that point of argument is not considered in the BIA's final decision here, which is what's before this court today. The timeliness of her application wasn't something that was raised in the BIA's decision, and she did submit her petition for review within 30 days of the BIA's final order here. So that petition itself is timely, and that's the only order before this court that is in consideration here in regards to timeliness. But Petitioner didn't challenge the timeliness finding of the IJ to the BIA. So why isn't that a waiver of any challenge to that finding? Yes, Your Honor. So although he didn't challenge the timeliness finding of the I-589 before the BIA, the BIA still didn't factor that into their analysis. So the BIA did not address at all the timeliness of her asylum application, and in doing so, in evaluating all of her claims before the immigration judge with regard to her asylum and her withholding of removal, which are what she applied for through her I-589, the BIA essentially adopted the reasoning that they were timely because it did address the merits of her I-589 and her asylum and withholding of removal applications. But we have to look at our jurisdiction sua sponte, right? So if we find it was untimely, then regardless of whatever the BIA did, if we think there's no jurisdiction, then we'd have to just dismiss the petition, correct? That's true, Your Honor. If you find that there's no jurisdiction regardless before this court, then the court would, of course, have the authority to dismiss the claim. Is the statutory bar on asylum claims, if you wait more than a year, a jurisdictional bar, or is it just a statutory claim rule? I believe, Your Honor, it's a statutory claim rule, so it's not necessarily. Claims processing rule, so it would not bar our jurisdiction to review the BIA decision. That's true, Your Honor. It is a statutory bar here, so I correct myself, Your Honor, thank you. There is no jurisdictional bar if the court finds the asylum application was untimely, both because it is a statutory bar, so it would prevent her from raising the claim in the first place. It's a claims processing rule as opposed to a jurisdictional rule, and the BIA ruled on the merits. Yes, Your Honor, thank you. And the court does have jurisdiction to review the BIA's final order, of course, under the 8 U.S.C. 1252 in this case. Rosenthal, I think, is asking a question, but we can't hear her because she's muted, and I also neglected to thank her for sitting with us today. But you are on mute, so we need to do something about that. Rosenthal, you're muted. There we go. Try this now. Can you hear me now? Yes. Yes, Your Honor. Okay, very good. So sorry for the delay in that. Brief question. Assuming that we have jurisdiction and that there's no time bar, the nexus finding is what I want to draw your attention to, and I have two questions. What standard should we apply in reviewing the argument that the BIA erred when it found that the immigration judge did not err in determining the absence of nexus between the harm that your client fears and her particular social group? And relatedly, she was attacked for the second time by the same man who, eight years earlier, had attacked her. The BIA and the IJ found that that was an attack based on a personal vendetta or personal motivation, not any membership in a particular social group. So I wondered if you could address both of those questions. Absolutely, Your Honor, and I do notice that my time has elapsed. May I briefly answer your questions? Yes, you may. Thank you.  Yes, so with regard to the standard of review here, in general, the court reviews factual findings, which might include nexus issues, for substantial evidence. However, Ms. Zavala-Molina has been deemed credible, and so therefore, in that context, this court has previously concluded that nexus issues are questions of law entitled to de novo review. So in Ms. Zavala-Molina's case, the standard of review for this court is de novo. And with regard to your question regarding Ms. Zavala-Molina's attack or having potentially a personal vendetta, the court has repeatedly found that in cases where there might be a personal vendetta, a mixed motive analysis may still allow the court to find that the individual had been persecuted and that there was a nexus between that persecution and a protected ground. In this case, the government may cite to the Zatino case to point this court's attention or to attempt to convince this court that her attack was a personal vendetta or an isolated act of criminal violence. However, that case was much more clearly so a personal vendetta and an isolated incident. In that case, an individual's family members were attacked by their neighbors in an attempt to steal their land. The individual wasn't present on that day. He was already in the United States. And the individual admitted that the only reason that they targeted his family was to steal the land. Here, Ms. Zavala-Molina's second attack was clearly motivated by a desire to persecute her because she had reported her crime to the police, which creates the nexus that this court should consider that the BIA erred in failing to recognize here. Thank you, Your Honor. Let me cite to the statute 8 U.S.C. Section 1158. So Exception 2 is authority to apply for asylum and B is the time limit. And it says that subject to subparagraph D, paragraph 1, shall not apply to an alien unless the alien demonstrates by clear and convincing evidence that the application has been filed within one year after the date of the alien's arrival in the United States. There is an exception for changed circumstance that an application for asylum of an alien may be considered, where there are changed circumstances that materially affect the alien's or applicant's eligibility for asylum. And then Section 3 says limitation on judicial review. Quote, no court shall have jurisdiction to review any determination of the attorney general under paragraph 2. So that means there is no jurisdiction. There's no judicial review of the agency determination of timeliness based on this statute. And it does invoke jurisdiction, correct? That is what the statute says. That's true, Your Honor. It does invoke jurisdiction. Right. So if we have no ability to, we have no jurisdiction to review the timeliness determination of the agency, then I guess I'm still unclear here if the IJ determined that there was a statutory bar here because a client applied outside the one-year limit, and we have no jurisdiction to review that determination under the statute. I guess I'm still asking. We're going to have to talk about that further because we're reviewing the BIA decision. The BIA did not make a timeliness finding. That's correct, Your Honor. So that's the answer to the question. But I guess we can discuss it further. That's correct, Your Honor. Because the BIA did not rule in its final removal order on the issue of timeliness, as the statute mentioned, it's the agency's final order that is before the court. And so if the agency were to have ruled that her application was untimely, then that would potentially likely bar jurisdiction for this court. However, since the BIA failed to make that determination, that issue is not before the court today. Okay. Thank you. Thank you, Your Honors. My name is Jonathan Robbins, and I'm here on behalf of the respondent, the Attorney General. Good morning to all of you.  It is a well-established understanding in the law that in order to establish refugee status, you have to show more than that you were harmed in your home country. You have to show that that harm was on account of a statutorily protected ground. And that rule in the law leads to cases like this, very unfortunate cases, where people undergo significant harms in their home country, and yet they can't establish refugee status. And I certainly think that this is a case where an individual has undergone significant harm in their home country but still fails to meet the requirement. It's well-established in the law that victims of general ordinary types of crime don't implicate a nexus to a statutorily protected ground. And we see these cases very commonly in cases out of Central America where we know that the populace in those countries has been— In the second attack, the attacker was very specific that he was attacking the petitioner because she had reported him to the police for the previous assault. So why isn't there a nexus here? It seems very clear that it was on account of her reporting of the prior assault. Well, so to the extent that some of her groups had that specific characteristic in those groups, they were part of groups that were proposed that had other problematic aspects. But even if you were to just carve out that specific characteristic about reporting to police, those are groups that have generally been rejected by the courts of appeals as not being sufficiently either particular or distinct. Now there's a distinction that's been made for people who testify in open court. But what about nexus? Well, nexus is different with respect to cognizability of a group. I understand, but I thought you were raising a nexus point. And so I was just asking about the nexus. Well, I'm raising both. So here's what happens in these cases. Because the law is well established that you can't establish a claim based on being a victim of somebody who's focused on general criminal intent, what ends up happening in these cases is the petitioners pick whatever characteristics or personal traits might be pertinent to them, and they try to craft artificial social groups. And they do this, and the petitioners have taken their former counsel to task. Let's talk about this petitioner. That's exactly what happened in this case. I don't want to hear about what petitioners do, really. I want to focus on the one, the PSG, that is being advanced today, that was advanced before the BIA, particular victims of sexual crimes who further report their assailants to the authorities. Okay, this particular social group. First of all, nexus. What is your argument as to whether or not there's a nexus to that group? My answer would be that it is impossible for that group to have been the nexus. Because in order for the Supreme Court has told us that what nexus is is a motive requirement. The persecutor must be motivated by your membership in the I'm sorry. Sorry. Can we fix that? I'm sorry. Thank you. So the Supreme Court has told us that when we're talking about nexus, what we're talking about is a motive requirement. The persecutor has to know more than that you're a member of the group. They have to care that you're a member of the group, and they have to be seeking to harm you because of your membership in that group. But isn't that, go ahead, I'm sorry. The group you just described, the petitioner was not a member of until after she'd been harmed. In other words, she wasn't a member of the group at the time the perpetrator harmed her. She wasn't a victim of a rape until after the rape occurred. So it's not possible for that group to have been the motivation for the perpetrator of the harm. No, for the second assault, though. Exactly. Okay. Well, then, as far as reporting. So then the question is, okay, so now the group is changing. Now you're, I guess, a member of a second group of people who report crimes. Putting aside that those claims have been rejected, similar claims about reporting crimes as being insufficiently particular and not socially distinct. Let's just focus on nexus, and then we'll get to cognizability. Okay. Well, what does it mean to report something to the police? Does it mean an anonymous tip? I mean, particularity requires that you have adequate benchmarks for the group. No, we're talking about nexus. Nexus. Oh, well. Motive. Okay. Well, okay, is it possible that the perpetrator of the harm could have been motivated by this personal desire to not be reported to the police? Yes. But that's not a protected ground. No, okay. Well, doesn't he threaten her the second time, at least in part, because she is a member of the particular social group that was a victim of sexual crime and reported it to the authorities? He tells her that. He certainly didn't want her to report. But the notion that he's harming her because she's a victim of a crime and is reporting, I mean, I guess you could theoretically say that he's doing it for that, but that's a personal reason. He wants to avoid escape from the police. That's general criminal intent, right? And so general criminal intent has been found repeatedly not to implicate a nexus to a protected ground. If I can follow up with one more question. Yes. If both of us are correct, that is, it's a combination of his desire to intimidate her against reporting him, number one, and number two, a personal vendetta, how do we deal with this mixed motive result? Respectfully, I don't think it's a mixed motive. Essentially, the claim here appears to be, okay, I've made you a member of this particular social group, and now I'm harming you for some sort of retaliation for being in this social group. If that's the question that's being asked, it seems to me the question is then, why did this person make the person a member of this group to begin with? It's the answer to that question that is the actual motive for the perpetrator of the harm. So the petitioner is essentially saying, well, this person harmed me, and now he's made me a member of a group that he's trying to go against. Do you see what I'm saying? If a victim of sexual assault could establish a group membership based on the fact that they've been assaulted, then what would stop somebody saying, well, I'm in a group of people who have been persecuted? It would completely annihilate the entire social group requirement. But that's not what she said. She said, I'm a member of a particular social group that was assaulted and reported it to the police. Right. And I'm now being targeted because of that membership. Right, and what I'm saying is this. Let's say you take out the problematic part of the group and do her that benefit. Take out the part that defines it circularly by the fact that she's been harmed and leave only what's left, which is the reporting to the police. Yes, that is why he might be seeking to harm her, to dissuade her from reporting to police. The government doesn't dispute that. So if you want to call that a nexus, fine. But a nexus doesn't matter if it's not to a protected ground, and reporting to police is not a social group. Let's move on from nexus and go to cognizability. Okay. So is there a case on point about reporting to the police? Well, we've cited two. The published case, of course, I think you're probably referencing is Henriquez-Rivas, which is the testifying in open court.  The court didn't actually say that that was a social group, but it remanded the board to assess that. Right. But there have been cases that have been rejected with respect to just simply reporting, because reporting to the police. Name when in the Ninth Circuit, possibly? I would have to, I can file a 20-J. There are cases. There are certainly cases that have rejected groups of cooperating police. I'm wondering if we or the BIA has actually ruled on someone who's been assaulted because they actually went to the police and reported. Because at some point, that does distinguish them from the society at large, that they actually contacted the police. Not necessarily, Your Honor. So there may be circumstances like when somebody testifies in open court, and they may be readily identifiable as a snitch. Maybe that might be a situation where they're recognizable in society. But we don't really have any evidence in this case one way or the other, because the petitioner didn't properly raise these claims. She raised a bunch of claims to the IJ. One of these had this reporting requirement. But then she raised completely different groups to the board. And the board was well within its purview to apply its precedent. But the board had the further report group in front of it. It ruled on it. Fair enough, Your Honor. But that group is young women who are particular victims of sexual crimes in front of it. Well, that obviously is a group that fails on its face. The court has repeatedly rejected the term young as not being sufficiently particular. Okay, but this group has the further reporting. And I'm just wondering, do we have any cases on this reporting aspect? Right, but that wasn't raised to the immigration judge. So the board didn't address that group because it hadn't properly been raised below. That's the problem. So the board didn't opine on whether society views this as a distinct group or not. You can tell right away it's a problematic group. It's not going to be sufficiently particular because young doesn't create clear benchmarks for who's in the group. It's circularly defined by the fact of harm. And so even if you get to the issue of reporting, which the board didn't do here because it hadn't been properly raised. Well, they do rule in the alternative. Even if the respondent had established a cognizable particular social group, we agree that there was no nexus. Right, but that's a different analysis. Cognizability and analysis are two separate things. But it didn't find that the group was cognizable. And, look, this is important because one of the things that petitioners are trying to do is something we see often, and it's the reason the board issued its precedent in WIC is because there was an enormous administrative problem before the agency where people were altering the terms of their group on appeal. And this creates an enormous problem for the board because every time somebody does that, it's not a substantially similar group. Usually what it requires is for the board to remand because when you're looking at something like social distinction, for example, social distinction is a factual inquiry. But how socially distinct is it to testify in court versus go to reporting to the police because not many people will be in the courtroom, right? So it's more word of mouth that so-and-so testified against X gang. And that equally could apply to someone reporting to the police, right? You may be seen going to the police station. Someone may see you at the police station making the report. It's really more the discussion outside in the community that someone has taken this action. So I guess I'm unclear on that perceived by society why it's really materially different, making the report to the police versus testifying. Well, in the cases that I've seen where courts have rejected, it's more a basis of particularity because cooperation with police means a whole different sort of things. Does it mean reporting to the police? Does it mean making an anonymous tip? Does it mean being involved undercover in some way? But in this case, this person went to the police station, was taken to the hospital, had a forensic examination, was told to come back to the police station two or three times to do photo lineup identifications. It's clearly not an anonymous phone tip. Fair enough, Your Honor. And all of those, I think, could be equated to testifying in court. In fact, maybe more because more people probably saw all of those interactions, right? Going to the forensic examination, going to the hospital. Well, Your Honor, I'll follow 28J with the cases where the court has rejected similar types of groups because it didn't implicate the testifying in open court. There are a number of them. But the board didn't reach any of this. We're talking about merits that the board didn't reach now. And the board didn't reach these merits because the petitioner didn't raise this group to the immigration judge first. You can raise 1,000 iterations of a social group to the immigration judge if you want, and the immigration judge will have to address every one. But if you raise it on appeal first, the board is entitled to say you haven't properly raised it. The board is an adjudicating body, an appellate body. It doesn't make findings of fact for the first time on appeal. And the questions you're asking about social distinction require looking at facts. It requires looking at country conditions evidence. What does the country conditions evidence say about how society perceives this group? Are they even a member of the group? There's that factual question. These are all factual questions that the board can't consider in the first instance. Under its governing regulations, the board is prohibited from making findings of fact. So if the board allows people to alter their group on appeal, it's going to have to remand in countless cases for more fact-finding because the group has been altered. And that's why this court in Honshorov upheld the board's decision in WIC. The board wasn't breaking any new ground here. It's a commonly recognized principle that appellate bodies don't make findings of fact. That's supposed to be presented to the fact finder, and that didn't happen here. And so the board was well within its rights to say we're not going to consider these new groups. So do you think that going to the police station, filing a report, going to a forensic medical examiner, going to the hospital for treatment, coming back to the police station two or three times to do photo lineups, you're saying that is materially different and not socially distinct, but testifying in court is? I would say that that would depend on the evidence presented in the case. If there is evidence to show that society perceives that as a separate faction of society in some way, people who do that, then maybe that could meet the social distinction requirement. And those are the facts here, right? Well, we don't really know. That's the evidence of what happened here. But the evidence of what society perceives those people to be is different. That's the question, and that's the inquiry for social distinction. And that's what there's no evidence of. But, again, we're talking about something the board did not address because it was not properly raised. So we're jumping the gun. If you were to disagree that the board was somehow and say the board was in error for not upholding its precedent and saying we're not going to consider groups that were waived, then it would have to go back and the board would have to address that and the merits in the first instance. But we're way ahead of that because the board didn't address it to begin with. So talking about the merits of it isn't really proper. We can only resolve the case on the basis that the board decided the case. And the board said we're not reviewing this because it wasn't raised to the IJ. And on that point, the board was correct. And, again, there's this notion that substantially similar cases, it's important to understand why most of these cases aren't substantially similar because they require different types of inquiries into the questions that answer whether they're a social group. So you could have a group that say one of her groups was based on being Salvadoran women and one of them was based on being young Salvadoran women. They might seem substantially similar at first glance, but they're actually very different. Young, inserting the word young into the group is changing both the size of the group and that may affect how society perceives it. It also affects the particularity analysis because all of a sudden young makes the benchmarks about who falls in the group unclear. What does young mean? Does it mean a small child? Does it mean somebody who's 30? So you don't even know who's in the group when you add those types of terms. And so groups that might seem at first glance to be substantially similar are not substantially similar with respect to the analysis that's applied in determining whether a group is cognizable and that is why this court upheld the board's precedent decision in WIC saying we are going to allow the board to reject to consider these types of new altered groups on appeal because it's entitled to put a stop to that type of litigation where people are just constantly changing their claims as the case goes up. Oh, I see I'm over time. Did your honors have any questions that you wanted me to address? Does anyone have any questions? No, thank you. No, thank you. Thank you very much for your time, your honors. Thank you. All right, counsel, you have rebuttal time. Good morning, your honors. My name is Christina Maraskis. I'm a certified law student on behalf of the petitioner here today. I just have a couple points I would like to make on rebuttal. Regarding some of the questions that Judge Coe posed to my co-counsel, I would like to reiterate that the one-year bar for the asylum claim is not a jurisdictional issue here. It's barred under Chenery, the Chenery case. Further, that one-year bar issue only deals with asylum. It does not deal with the withholding of removal claim as that is a mandatory form of relief if found that persecution is more likely than not. Further, the tension between Honcharov, the exception there, and the substantially similar PSGs, the PSG that we would like to raise on appeal or that Ms. Sabella Molina raised before the BIA on appeal is procedurally barred due to the incompetence of her prior counsel. This led to PSGs being raised for the first time on appeal, and his incompetence in this situation complicated this issue. The second part of your Honcharov exception is that the immigration judge and incompetent counsel failed to fully develop the record. In this case, the IJ actually had four hearings and actually told Ms. Sabella Molina how to get a lawyer, referred her to legal aid, gave her time to get a lawyer, and when the lawyer came, the IJ said, you know, you need to submit all this additional evidence to corroborate your case, told them to try to get police reports, hospital records, gave them another continuance, had a third hearing where the IJ told the lawyer that the PSG was likely, you know, not cognizable, told him go brief it, then had the fourth hearing. So tell me how that's a failure to adequately develop the record. Yes, Your Honor. Much of the time spent during those immigration hearings was between Ms. Sabella Molina's previous counsel, Friedman, and the immigration judge, Judge O'Connor, verbally sparring. They didn't necessarily create a colorable conversation for a PSG to be adequately developed. There was so much time back and forth disagreeing that, you know, a productive environment for a productive conversation was not created between the two for a cognizable PSG to come into fruition. Her counsel, Friedman, would continually move on to PSGs, and we also argue that Judge O'Connor did not, under this court's precedent, did not scrupulously delve into any of the PSGs. Therefore, we say that he did not adequately develop the record, and Ms. Sabella Molina's plight was only hindered further by her incompetent counsel, Friedman. Further, I would just like to make one last point that we assume cognizability here of the PSGs because the BIA did in their decision on page four. Therefore, the cognizability issue of Ms. Sabella Molina's PSGs is not here before the court today. Thank you for your time, Your Honors. Thank you very much, counsel. Again, thank the University of San Diego Law School for representing Ms. Sabella Molina pro bono and doing a great job of it. Thank you, and thank you to counsel for an excellent argument. Sabella Molina v. Bondi will be submitted, and this court will take a brief recess and then get reset for the following session. All rise. Please be seated. Thank you.
judges: WARDLAW, KOH, Rosenthal